UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRITTANI ATKINS, <br><br> Plaintiff, <br><br> v. <br><br> HEALTHCARE REVENUE RECOVERY GROUP, LLC, <br><br> Defendant. | No. 21 CV 2408 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff Brittani Atkins received telephone calls from debt collector Healthcare Revenue Recovery Group, LLC, seeking to collect on a roughly $30 outstanding debt she had with Little Company of Mary Hospital. She sued, claiming the calls violated the Fair Debt Collection Practices Act. Defendant moves to dismiss. The motion is granted in part and denied in part.

I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim over which it lacks subject-matter jurisdiction. A court lacks subject-matter jurisdiction if a plaintiff doesn't have standing. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). "To establish standing, a plaintiff has the burden to establish that [she] has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

## II.     Facts

Plaintiff Brittani Atkins failed to pay a debt of less than $30 to Little Company of Mary Hospital. [1] ¶ 5.[1] In March 2021 or sometime in 2020, she began receiving telephone calls from debt collector Healthcare Revenue Recovery Group, LLC, seeking to collect on the debt. [1] ¶ 11; [45-3] at 27:13–19.[2] After plaintiff picked up the call, the representative on the line introduced herself as a "debtor trying to collect a debt." [45-3] at 28:8–10. Defendant asked who she was, and the representative said she was calling from "HRRG." [45-3] at 28:18–19. Plaintiff asked what HRRG stood for, and said she was "100 percent sure [she didn't] have any business with HRRG." [45-3] at 28:23–24, 29:1–4. The representative refused to answer Atkins's question. She asked Atkins to provide certain personal information to verify that it was in fact Atkins on the line. [45-3] at 29:1–4. Atkins refused to provide the information. "I'm not going to give you my address and my last four of my Social…I don't know you. I don't have any business with HRRG," Atkins recalled telling the representative. [45-3] at 29:8–10.[3] But the representative didn't let up. She told Atkins, "You have

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are taken from plaintiff's complaint and her deposition testimony. [1]; [45-3].

[2] The first call mentioned in plaintiff's complaint is the March 2021 one. [1] ¶ 11. In her deposition, plaintiff said she believed the first call was in 2020. [45-3] at 27:14–16. Pressed on the discrepancy between her complaint and testimony, Atkins then said it was possible the first phone call was in March 2021. [45-3] at 50:1–6. The discrepancy is irrelevant to whether she has standing.

[3] Atkins later said in her deposition that she didn't recall if the representative had asked for her Social Security number but was sure that the representative had asked for her address and full name. [45-3] at 30:3–6.

business, you have business." [45-3] at 29:14. Atkins again said she didn't have business with HRRG, and told the representative, "[Y]ou can probably take me out of your database because I'm quite sure you have the wrong person." [45-3] at 29:15–17.

Defendant left at least five voicemails for Atkins asking her to return the calls. [45-3] at 37:3–5, 51:11–18, 53:2–6; [1] ¶ 14. Atkins ignored the messages because she didn't believe she had any business with HRRG. [45-3] at 37:5–7. In April 2021, though, Atkins picked up a call from an unknown number. [45-3] at 33:11–12, 34:21–22. She heard only silence on the other end and then the sound of someone hanging up. [45-3] at 33:15–23. She called the number back to ask who was calling and why they'd hung up on her. [45-3] at 34:20–24. The person on the other end said she was calling from HRRG and asked for Atkins's personal information. [45-3] at 36:9–12. This time, Atkins provided the information. [45-3] at 36:13–21. For the first time since defendant had begun calling Atkins, defendant disclosed that it was calling on behalf of Little Company of Mary Hospital. [45-3] at 37:1–3. Defendant's phone records show calls dialed to Atkins's number between March 31 and April 27, 2021. [49].[4]

The April 2021 call left Atkins so upset that she began to tremble. [1] ¶ 17. She was upset that defendant had continued to call her even after she asked to be removed from its database, and that on top of that, defendant had hung up on her. [45-3] at 59:12–18, 60:3–6.

---

[4] The clerk shall unseal docket entry [49]. The phone records are not protected from public disclosure now that they are relevant to judicial decisionmaking. *See* [48].

3

Atkins sued, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, specifically sections 1692e (false and misleading representations), 1692d(6) (placing calls without meaningfully disclosing the caller's identity), and 1692d(5) (calling repeatedly or continuously with intent to annoy). [1] ¶¶ 18–23. She has since dropped her claims under sections 1692e and 1692d(6), conceding that she lacks standing to bring those claims. [46] at 2. Defendant moves to dismiss her remaining section 1692d(5) claim under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. [45] at 10–12.

## III. Analysis

### A. Evidentiary Issues

The parties disagree about what I can consider when resolving defendant's motion. Specifically, they disagree about whether I can consider a declaration by plaintiff and whether I can consider an intrusion-upon-seclusion theory of injury that plaintiff advances in her response brief.

Plaintiff submitted a declaration stating that defendant called her nine times, [46] at 7, instead of at least five times, as she claimed in her complaint and deposition, [1] ¶ 14; [45-3] at 51:11–19. The declaration was submitted as an attachment to her response brief.[5] [46] at 7. Defendant takes issue with the declaration for two reasons. First, it says the declaration contradicts plaintiff's deposition testimony. [50] at 5–6.

---

[5] Both parties refer to this filing as an affidavit. [46] at 7; [50] at 5. But something is only an affidavit if its content has been sworn to in the presence of someone authorized to administer oaths—that is, if it is a sworn declaration. *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). Atkins's submission is instead an unsworn declaration.

4

Second, the declaration doesn't comply with the statutory requirements for an unsworn declaration. [50] at 3–5.

### 1. Contradiction with Plaintiff's Deposition Testimony

Defendant points to a number of cases holding that a party can't "create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996); *see also Hickey v. Protective Life Corp.*, 988 F.3d 380, 389 (7th Cir. 2021); *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020); *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018). Plaintiff's statements don't contradict each other, though. In her deposition, Atkins said she received at least five calls from defendant. [45-3] at 51:11–18, 53:4–6. In her declaration, she said she received nine calls. [46] at 7. Nine is greater than five; the allegations are consistent.

### 2. Compliance with 28 U.S.C. § 1746

Under 28 U.S.C. § 1746, in any proceeding where a sworn declaration or affidavit is required or permitted, an unsworn declaration is acceptable in lieu of that, so long as the unsworn declaration is made under penalty of perjury. The statute usually comes up in the context of motions for summary judgment, where I can only consider evidence that would be admissible if offered at trial. *See Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 460 (7th Cir. 2014). But the text of the statute is broad: "Wherever…under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported…by [] sworn declaration…or affidavit…such matter may, with like force and effect, be supported…by [] unsworn declaration…as true under penalty of perjury." 28 U.S.C. § 1746. When contesting

5

jurisdictional facts, parties are permitted to support their statements with sworn declarations, so the statute applies here as well.

Atkins's declaration doesn't say that she made any of the statements "under penalty of perjury" or that the "foregoing [statement] is true and correct." [50] at 4 (quoting 28 U.S.C. § 1746(1)). The statute requires that language or language "in substantially the [same] form," and Atkins's declaration doesn't have it. 28 U.S.C. § 1746. It simply states: "I, Brittani Atkins, being first sworn on oath, state as follows." [46] at 7. Plaintiff therefore can't submit her unsworn declaration in lieu of a sworn declaration, and I do not consider it here. It's true that I can consider filings outside the pleadings on a 12(b)(1) motion, *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020), but those filings must constitute "competent proof" of standing. *Id.* at 278. That means "a showing by a preponderance of the evidence[] or proof to a reasonable probability." *Id.* An unsworn declaration that is not made under penalty of perjury is no evidence at all. I therefore only consider the allegations in Atkins's complaint and deposition testimony.

### B. Standing

A defendant can challenge standing with either a facial attack or a factual attack. *Bazile*, 983 F.3d at 279. "A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Id.* A factual attack, however, challenges the plaintiff's underlying jurisdictional allegations. *Id.* Defendant's argument is a facial attack; it argues that the allegations from the complaint and deposition testimony don't amount to an injury in fact. [45] at 10–11;

[50] at 8. And even if they did amount to an injury in fact, defendant says, the injury isn't traceable to defendant's conduct. [45] at 11–12.

    1.    *Injury in Fact*

To allege an injury in fact, a plaintiff must demonstrate that she has suffered "an invasion of a legally protected interest" that is "concrete and particularized." *Spokeo*, 578 U.S. at 339. To determine whether something has caused concrete harm, I look to both history and Congress's judgment. *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020). As to history, I ask "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204, -- U.S. ---, --- (2021). This inquiry does not require an "exact duplicate in American history and tradition." *Id*. The common law recognized that a harm can be concrete even if it's intangible—for example, reputational harms, disclosure of private information, and intrusion upon seclusion. *Id*. According to plaintiff, intrusion upon seclusion is analogous to defendant's conduct: "caus[ing] a telephone to ring repeatedly or continuously with intent to annoy" in violation of Section 1692d(5) of the FDCPA. *See* [46] at 1. Even after plaintiff said she had no reason to speak with defendant and told defendant to remove her from its database, defendant continued to call her at least five times, she says. [46] at 2; [1] ¶¶ 11, 12, 14; [45-3] at 51:11–19.

Defendant says I shouldn't consider plaintiff's intrusion-upon-seclusion argument because it's a "brand new claim" raised in her response brief. [50] at 8. What's more, defendant argues, plaintiff testified in her deposition that her damages from the phone calls were limited to emotional distress. [50] at 6 (citing [45-3] at 99:8–

7

12). A plaintiff cannot use her response brief to amend her complaint by adding new facts or claims. *See Bissessur v. Indiana Uni. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009). But in this context, intrusion upon seclusion isn't a *claim*. It is instead a theory of injury in fact advanced by plaintiff in her response brief to establish standing. Complaints need not plead legal theories, *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011), and Atkins's testimony that she suffered only emotional damages does not estop her from articulating a different concrete injury in fact in support of this court's jurisdiction.

Still, defendant says, I should disregard the intrusion-upon-seclusion theory because plaintiff fails "to demonstrate that…defendant 'intentionally intrude[d], physically or otherwise, upon the solicitude or seclusion of another or [her] privacy affairs or concerns.'" [50] at 8 (quoting *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021)). Defendant doesn't elaborate beyond that, except to say that plaintiff's alleged intrusion upon seclusion "does not assert facts that bear a close relationship to traditional harms." *See* [50] at 8. I disagree. "'Courts have…recognized liability for intrusion upon seclusion…when 'telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff.'" *Gadelhak*, 950 F.3d at 462. Plaintiff's claimed injury is of the same kind as that recognized in *Gadelhak*—an irritating intrusion.

Defendant says *Gadelhak*'s standing analysis is irrelevant here because that case dealt with a different statute, the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1). Defendant says there are relevant distinctions between the TCPA and

8

FDCPA in terms of standing, and in support, relies on *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020). [50] at 7. But *Gunn* doesn't help because it doesn't stand for the proposition defendant thinks it does.

The plaintiffs in *Gunn* received a letter demanding payment from their homeowners' association. *Id.* at 1070. They sued, alleging that the letter contained false and misleading statements in violation of the FDCPA. *Id.* They said that the unwanted dunning letter they received was similar to the unwanted text messages in *Gadelhak*. *Id.* at 1071. The court disagreed. It said the Gunns only claimed that the letter violated the FDCPA and that they had suffered emotional distress as a result. *Id.* ("Pestiferous text messages, spam phone calls, and unwelcome faxes can cause cognizable injury, for the reasons we gave in *Gadelhak* when explaining how the common law treats noises and other aggravating intrusions. Yet the Gunns do not contend that the law firm's letter was a forbidden invasion of privacy."). Neither of those things—a bare procedural violation or emotional distress—was enough to establish injury in fact, the court said. *Id.* at 1071–72.

Defendant reads *Gunn* to mean that analogizing injuries alleged under the FDCPA to injuries alleged under the TCPA is impermissible—that I shouldn't consider TCPA caselaw in an FDCPA standing analysis. *See* [50] at 7. But repeated and intrusive calls are analogous to intrusion upon seclusion, *Gadelhak*, 950 F.3d at 462, regardless of whether they're made in violation of the TCPA or FDCPA.

Importantly, and as the court itself pointed out, the Gunns didn't allege that they had suffered an impermissible invasion of privacy, like the plaintiffs in

9

*Gadelhak* had. *Gunn*, 982 F.3d at 1071. Atkins *is* claiming invasion of privacy, and "allegations matter" in establishing standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246 (7th Cir. 2021). Atkins's claim comes under a different statute than Gadelhak's, but the common-law analogue of intrusion upon seclusion is the same.[6]

### 2. Traceability

Defendant next argues that even if plaintiff suffered an injury in fact, that injury isn't traceable to defendant's conduct. [45] at 11–12. Instead, the injury is traceable to Atkins's conduct because she chose not to pay her debt. [45] at 11 (citing *Buchholz v. Meyer Njus Tanick PA*, 946 F.3d 855, 867 (6th Cir. 2020) ("The cause of [plaintiff's] anxiety falls squarely on Buchholz because *he* chose not to pay his debt—and now fears the consequences of his delinquency. So even if anxiety is a cognizable injury…the anxiety that [plaintiff] alleges is not traceable to anyone but him.")). That argument is a non-starter. The purpose of the FDCPA is to protect people who owe debts against abusive behavior by debt collectors. *See* 15 U.S.C. § 1692(e). Collectors can choose not to harass debtors, and harassment is not the inevitable consequence of a consumer who doesn't pay her debt.

Defendant says Atkins can't prove traceability for another reason: defendant might not have been the one calling her. [45] at 12. More than one creditor was calling

---

[6] Because plaintiff adequately alleges intrusion upon seclusion, it doesn't matter that her other alleged harm (emotional distress) isn't cognizable. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021); *Gunn*, 982 F.3d at 1071; *Nettles v. Midland Funding LLC*, 983 F.3d 896, 900 (7th Cir. 2020). Plaintiff concedes that emotional distress cannot create a case or controversy over Counts 1 and 2 and agrees to the dismissal of those counts. [46] at 2. But a different injury can support jurisdiction over Count 3.

10

plaintiff at this time, defendant says (without citation to any evidence), and plaintiff had a pending lawsuit against another debt collector at the time. [45] at 12. The implication is that the calls could have come from another creditor. But it is reasonable to infer on this record that defendant was the caller—Atkins testified to calls from defendant and phone records confirm that defendant placed calls to Atkins. [45-3] at 37:3–5, 51:11–18, 53:4–6; [49]. Plaintiff has carried her burden in showing that an irritating intrusion was traceable to defendant's conduct.

## IV. Conclusion

The motion to dismiss, [45], is denied as to Count 3 and granted as to Counts 1 and 2.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: January 3, 2023